UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                  :
MARY FAKTOR,                                      :
                                                  :    CASE NO. 1:09-CV-511
            Plaintiff,                            :
                                                  :
vs.                                               :    OPINION & ORDER
                                                  :    [Resolving Doc. No. 90]
LIFESTYLE LIFT, *et al.,*                         :
                                                  :
            Defendants.                           :
                                                  :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Mary Faktor moves this Court to certify a class in this fraud and breach of contract action against the Defendants. [Doc. 90.] The Defendants, David M. Kent, D.O., David M. Kent P.C. ("DMK"), Lifestyle Lift Holdings, Inc. ("LLH"), Lifestyle Lift (Cleveland Surgical Associates, "CSA"), and Scientific Image Center Management, Inc. ("SICM"), oppose the motion.[1] [Doc. 100.]

In resolving the motion to certify, this Court must decide whether the Plaintiff's claims—that the Defendants misrepresented the nature of their Lifestyle Lift facelift procedure in promotional materials and in individual consultations with prospective patients—will be efficiently adjudicated

---

[1] Defendant Dr. Kent developed the Lifestyle Lift. [Doc. 89-26 at 3.] Defendant LLH owns the "Lifestyle Lift" trademark and licenses the mark exclusively to Defendant SICM. [Doc. 89-25 at 2.] In turn, SICM sub-licenses the Lifestyle Lift mark to various medical centers and provides them with management and consulting services. [Id.] Defendants DMK and CSA are two medical centers licensed to use the Lifestyle Lift trade name. DMK, located in Troy, Michigan, employs one surgeon to perform the procedure, and CSA in Cleveland, Ohio, employs three surgeons. [Doc. 89-25 at 4-5.] Defendant Dr. Kent is either the sole shareholder or member of each of the above entities. [Doc. 89-25 at 4.]

Case No. 1:09-CV-511
Gwin, J.

as a class action. For the following reasons, the Court **DENIES** the Plaintiff's motion to certify.

## I. Background

Plaintiff Mary Faktor asks this Court to certify a Rule 23(b)(1) or (b)(3) class of those individuals who agreed to undergo and paid for the Lifestyle Lift procedure after seeing the Defendants' advertisements and hearing or viewing other representations about the nature of the procedure. With her complaint, Plaintiff Faktor says that the Defendants fraudulently misrepresented the nature of the Lifestyle Lift—a type of facelift performed under local anaesthesia— and breached their contract to provide her and the class members with a minimally-invasive, simple, and relatively painless procedure.

According to the Plaintiff's First Amended Complaint, these claims arise from two primary sources, statements made (and not made) in: (1) the Defendants' marketing materials, and (2) in one-on-one consultations at Lifestyle Lift surgical centers. [Doc. 83 at ¶¶22-24.] The Plaintiff says that a typical class member first becomes aware of the Lifestyle Lift after seeing a television infomercial.[2/] [Doc. 83 at ¶23.] After calling the listed 1-800 number, the class members speaks with an employee at the Defendants' call center, who sends them additional marketing material and schedules a consultation at a local Lifestyle Lift surgical center. [*Id.*]

At this consultation, a sales person meets with the prospective patient, shows them a video presentation, and makes a sales pitch about the procedure. [Doc. 83 at ¶23.] According to the Plaintiff, this sales pitch is scripted and closely-controlled by the Defendants. [Doc. 83 at ¶24.] After this presentation, the class member agrees to undergo the procedure and pays a deposit. [Doc. 83 at

---

[2/]The Defendants also advertise in shorter television commercials, magazines, and brochures. [Doc. 90-12 at 3.]

Case No. 1:09-CV-511
Gwin, J.

[¶23.] The Plaintiff says this deposit is often refundable for no more than a few days, sometimes becoming non-refundable before a patient ever speaks with a Lifestyle Lift surgeon. [Doc. 83 at ¶¶23, 30.]

Ultimately, the Plaintiff says that while the Defendants represent the procedure as new, advanced, minor, and relatively painless, the truth is anything but. [Doc. 83 at ¶25.] In fact, she essentially says that the Defendants are merely performing a traditional facelift—a major and painful surgery—under local anaesthetic. Thus, the Plaintiff claims that the Defendants commit fraud when they induce patients to put down a deposit on the procedure in reliance on untrue representations about its nature. As for the breach of contract claim, the Plaintiff says that these misleading statements become part of the contract between the patient and the Defendants upon payment of the deposit. Thus, the Defendants allegedly breach the contract by performing a more painful and invasive surgery.

Plaintiff Faktor underwent the Lifestyle Lift procedure and a blepharoplasty (an "eyelid lift") on January 7, 2008. She says that contrary to what she expected, the procedure was "traumatic" and "horrific." [Doc. 89-3 at 13, 89-4 at 5.] Moreover, after undergoing the Lifestyle Lift, the Plaintiff became depressed, which she attributes to the trauma of the procedure. [Doc. 89-5 at 6.]

On February 3, 2009, approximately thirteen months after her Lifestyle Lift, Plaintiff Faktor filed the instant class action lawsuit in the Cuyahoga County Court of Common Pleas. [Doc. 1-1.] The Defendants removed the suit to this Court on March 6, 2009. [Doc. 1.] On October 26, 2009, the Plaintiff filed a Motion for Class Certification. [Doc. 90.] The Defendants oppose the motion. [Doc. 100.] The Plaintiff has replied. [Doc. 121.] Accordingly, the motion is now ripe for ruling.

Case No. 1:09-CV-511
Gwin, J.

## II. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class action lawsuits. Fed. R. Civ. P. 23. A court may certify a class action if all of the Rule 23(a) procedural requirements are met, and if certification is appropriate under Rule 23(b)(1), (b)(2) or (b)(3). *Id.* The party seeking certification bears the burden of proof. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). District courts have broad discretion in certifying a class, but must first conduct a "rigorous analysis" into whether the prerequisites of Rule 23 have been met. *See Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161 (1982); *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998), *cert. denied,* 524 U.S. 923 (1998).

In reviewing a class certification motion, the court does not evaluate the merits of the plaintiff's claims and accepts as true the allegations in the complaint. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *see also Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 Fed. App'x 550, 555 (6th Cir. 2003). The court, however, may need "to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160. In fact, although maintainability may be determined on the basis of the pleadings, "ordinarily the determination should be predicated on more information than the pleadings will provide . . . The parties should be afforded an opportunity to present evidence on the maintainability of the class action." *Am. Medical Sys.*, 75 F.3d at 1079 (considering evidence in record presented by nonmoving party in reversing district court's order granting class certification).

Rule 23(a) sets forth the following four prerequisites to class certification: (1) the class must be so numerous that "joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims of the representative party must be "typical" of those

-4-

Case No. 1:09-CV-511
Gwin, J.

of the class; and (4) the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Court evaluates each prerequisite to certification in turn.

### III. Analysis

The Defendants say that the Plaintiff cannot meet either the Rule 23(a) prerequisites or Rule 23(b) requirements for class certification. In addition, the parties dispute which state law governs the claims in this case. While the Plaintiff says that Michigan law applies, the Defendants say the substantive law of the state where each class member's claim arose applies. Because the Court finds the Plaintiff's claims inappropriate for class certification even under Michigan law, it does not undertake an exhaustive choice-of-law analysis and instead accepts as true— for purposes of this motion only—the Plaintiff's contention that Michigan's law of fraud and contracts governs her claims.[3/]

The Court now turns to each of the Rule 23(a) prerequisites.

### A. Rule 23(a) Prerequisites

*1. Rule 23(a)(1): Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test for determining when too many parties make joinder impracticable, and the court should look

---

[3/]To prove fraud under Michigan law, a plaintiff must show:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

Hi-Way Motor Co. v. Int'l Harvester Co., 247 N.W.2d 813, 816 (Mich. 1976).

Case No. 1:09-CV-511
Gwin, J.

to the specific facts of each case. *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 523 n.24 (6th Cir. 1976), *cert. denied,* 429 U.S. 870 (1976). The practicability of joinder depends on the size of the class, the ease of identifying members, the ability to make service, and their geographic dispersion. However, "impracticable" does not mean "impossible." A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. Numbers alone are not determinative of this question. *Golden v. City of Columbus,* 404 F.3d 950, 965 (6th Cir. 2005).[4/]

Here, the Plaintiff satisfies the numerosity requirement. The Plaintiff says that nearly 120,000 persons have undergone the Lifestyle Lift procedure and would be potential class members. In opposing class certification, the Defendants make no challenge to this allegation or argument that the Plaintiff's claims fail the numerosity requirement. Thus, because joinder of the claims would be impracticable, the Court finds the Plaintiff has satisfied her burden to show numerosity.

*2. Rule 23(a)(2): Commonality*

The plaintiff must also show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A class representative must "be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Falcon,* 457 U.S. at 156 (internal citation omitted). In this regard, there must be at least one question of law or fact common to the class, the resolution of which will advance the litigation. *Sprague,* 133 F.3d at 397 ("It is not every common question that will suffice . . . .").

Discussing this standard, the Sixth Circuit has held that claims involving individualized

---

[4/] *See also Taylor v. CSX Transp.,* 2007 WL 2891085, at *3 (N.D. Ohio 2007) (noting that "although no firm numerical test exists, 'substantial' numbers are usually enough to satisfy the numerosity requirement, and 'it is generally accepted that a class of 40 or more members is sufficient'"); *Olden v. LaFarge Corp.,* 203 F.R.D. 254, 269 (E.D. Mich. 2004), *aff'd,* 383 F.3d 495 (6th Cir. 2004) (stating that when "the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied") (internal citation omitted); *Lichoff v. CSX Transp., Inc.,* 218 F.R.D. 564, 570 (N.D. Ohio 2003) (finding that plaintiffs are required to "present more than speculation, but plaintiffs do not have to 'establish class size with precision'").

Case No. 1:09-CV-511
Gwin, J.

issues of reliance, causation, and damages are generally not appropriate for class treatment. *See, e.g.*, *Sprague*, 133 F.3d at 397-98 (holding class certification improper on contract and estoppel theories because claims rested on unique representations made to and unique reliance by class members); *see also Am. Medical Sys., Inc.*, 75 F.3d at 1081 (granting mandamus to reverse class certification in defective implant case where defendant had produced ten different implant models over twenty years and each class member and/or doctor would need to testify as to conversations between them).

Here, the Plaintiff says that commonality exists because each class member saw "uniform written, photographic and videographic materials containing identical . . . representations and omissions of material fact" regarding the Lifestyle Lift procedure. [Doc. 90-1 at 7.] In addition, the Plaintiff points to various scripts and training manuals used by the Defendants' employees during the consultation process. Because the Plaintiff repeatedly avers that the injury complained of in this case is complete once the class member attends the Lifestyle Lift consultation, schedules the surgery, and pays a deposit, [Doc. 121 at 9, 11, 14], she says that only the advertising materials and misrepresentations or omissions made by the consultants *prior to this deposit* give rise to the class claims for breach of contract and fraud.

In probing behind these contentions as part of its rigorous analysis, however, the Court finds that a lack of commonality defeats class certification in this case. First, the Defendants advertising is not entirely uniform across the proposed class. [Doc. 102 at 3-4.] According to Defendant Dr. Kent and Steven Hanson, chief marketing officer for Defendant SICM, both the nature of the Lifestyle Lift procedure and the Defendants' advertising have changed since their inception in 2002. Specifically, Dr. Kent says that from 2002 to 2007, the Lifestyle Lift was performed exclusively using a "type one incision"—a small incision from the top of the ear to the ear lobe. [Doc. 89-26 at

-7-

Case No. 1:09-CV-511
Gwin, J.

4.] In late 2006 or early 2007, however, the Defendants began to offer the Lifestyle Lift as a variable incision procedure—permitting small "type one" incisions, longer "type three" incisions, or medium "type two" incisions. [Doc. 89-26 at 5.]

Both Dr. Kent and Hanson say that the Defendants' advertising has similarly "evolved" to represent this variation in outcomes. [Doc. 102 at 3-4, 89-26 at 10.] For example, a brochure produced in 2005 when the procedure only involved a type one incision touts the Lifestyle Lift as a "minor one-hour procedure" and disclaimed only that "results and recuperation may vary." [Doc. 102-26 at 3, 7.] In contrast, print materials from 2008 refer to the procedure more generally and contain much longer, more exhaustive disclaimer language. [Doc. 102-27, 102-28, 102-29.]

In a similar manner, a video advertisement from March 2003 shows Dr. Kent demonstrating the incision made, saying, "We make a very small incision in the crease of the ear that's completely hidden when it heals." [Doc. 102-22.] In a 2007 video, however, Dr. Kent says that the procedure varies from person to person: "Every client is different so we customize the procedure to each person's individual needs." [Doc. 102-19.] In fact, the video presentation Plaintiff Faktor watched during her consultation in December 2007 illustrates how a much larger incision is made, tracing a line down the front of the ear and around the back. [Doc. 126.]

Even if these variations in the Defendants' promotional materials are viewed as relatively minor, the same cannot be said for the class members' consultations with Lifestyle Lift employees.[5] Although employees at the Defendants' call-center do use scripts, the Plaintiff does not point to these conversations as the focus of her claims. In fact, according to the call center script produced by the

---

[5] In fact, the Plaintiff's own briefing on class certification illustrates the difficulty of handling her contract and fraud claims on a class-wide basis. Among other questions the Plaintiff says this Court must answer "one time for all the class members" is whether the Defendants "mislead their customers about the extent of the Lifestyle Lift surgery during their consultation." [Doc. 121 at 4.]

-8-

Case No. 1:09-CV-511
Gwin, J.

Plaintiff, the only statement made by the operator about the procedure is that it is "minor" and can take "about an hour depending on how many areas [the caller has] treated."[6] [Doc. 90-6 at 1.] Rather than induce the caller to commit to the procedure or make any payment, the call center operator simply schedules the initial Lifestyle Lift consultation.[7]

These subsequent consultations do have some common characteristics. Although Lifestyle Lift consultants are instructed to "apply their general training and experience in discussing the Lifestyle Lift procedures with prospective patients," [Doc. 89-37 at 5], the Defendants' Consultant Training Manual does provide a general structure for consultants to follow in their meetings, including fourteen questions and other items for discussion. [Doc. 109-3 at 2.] In addition, the training manual instructs consultants not to say "surgery" but instead to say "procedure" when discussing the Lifestyle Lift. [Doc. 109-2 at 9.]

Despite this generalized structure, the inherently variable nature of these consultations is strong factor precluding class certification. For example, although one class member may have been so decided on a facelift no matter the pain that she did not even care to hear the details of the procedure from the consultant before making a deposit, another may have wanted every detail and specification about the procedure. Thus, the first patient's consultant may never have gone beyond the terms of the advertisements and brochures, while the second's consultant could have discussed in detail how the procedure might be done for her. Without individual testimony, the Court would have no practical means of determining what each class member actually heard prior to making a

---

[6] Thus, this case differs from one in which the consumer views an advertisement, calls a 1-800 number, and makes a purchase using her credit card over the phone. Here, the Plaintiff says the class member is not "harmed" until after speaking with a Lifestyle Lift consultant and making a deposit. [Doc. 121 at 9, 11, 14]

[7] In a similar "Inbound Call Guide," the operators are instructed to inform callers that the Lifestyle Lift consultant is the person who can answer questions about how the procedure is performed and what to expect. [Doc. 107-2 at 3.]

-9-

Case No. 1:09-CV-511
Gwin, J.

deposit.

In addition, even though the Defendants do discourage their consultants from using the term "surgery," this fact does not mean that the class members uniformly received no details or only minimal details about the Lifestyle Lift procedure. In fact, the Defendants' Consultation Review Form sets out places for the consultant to check off if he or she discussed "possible prolonged recovery, infection, realistic expectations, scar locations, pain/discomfort, [and] bruising" with the prospective patient. [Doc. 109-8 at 5, 109-3 at 2.] Moreover, the fact that the procedure varies across patients or may be combined with other procedures—such as the blepharoplasty Plaintiff Faktor underwent—further shows that class members did not receive a sufficiently uniform sales pitch.

Finally, even assuming that the Defendants made generally uniform statements or omissions regarding the Lifestyle Lift procedure, the class members' reliance would necessarily need be determined on an individual basis. This fact alone prevents class certification in this case because, without an inquiry into what a each class member heard and whether that class member would have elected to undergo the Lifestyle Lift even if they knew "the truth," the Court could not ascertain whether the Defendants in fact committed fraud.[8/] *See, e.g.*, Sprague, 133 F.3d at 398 (reversing class certification on claim requiring proof of justifiable reliance where "there must have been variations in the [plaintiffs'] subjective understandings of the representations and in their reliance on them"); *see also* Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 457 (11th Cir. 1996) ("Even if the plaintiffs are able to prove that Delta disseminated a false and uniform message . . . they would also have to

---

[8/]In fact, the Court is further troubled by the subjective nature of the harm alleged in this case. Although Plaintiff Faktor says that her experience undergoing the procedure was "horrible," another class member who had an identical procedure might say that his experience was exactly as he expected.

-10-

Case No. 1:09-CV-511
Gwin, J.

show that all members of the class would have deferred their retirement [in reliance]. This sort of decision would necessarily have been highly individualized for each potential retiree."), *cert. denied*, 519 U.S. 1149 (1996); *In re St. Jude Med., Inc.*, 522 F.3d 836, 838 (8th Cir. 2008) ("Because proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment."); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998) (reliance element not readily susceptible to class-wide proof).

Recognizing this difficulty, the Plaintiff says that Michigan law does not require individualized reliance where the defendants make a misrepresentation as part of a "standard presentation" or "single course of conduct." [Doc. 90-1 at 4-5.] For support, the Plaintiff relies on *Yadlosky v. Grant Thornton LLP*, 197 F.R.D. 292 (E.D. Mich. 2000) and *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588 (E.D. Mich. 1996). In *Yadlosky*, a securities fraud case, the district court ultimately found class certification inappropriate because the plaintiff had "sued ten separate brokers/dealers that allegedly made misrepresentations to 2,811 individual investors over the course of thirteen years." 197 F.R.D. at 299. Moreover, the court in *Fuller* certified a class of retirees in an ERISA action based largely on the Sixth Circuit's soon-to-be-vacated panel decision in *Sprague. Fuller*, 168 F.R.D. at 597 (citing *Sprague v. Gen. Motors Corp.*, 92 F.3d 1425 (6th Cir. 1996), *vacated*, 102 F.3d 204.)

This case is not one of securities fraud permitting a showing of group reliance based on a fraud on the market theory. Nor is it a case where the elements of fraud are defined by statutory interpretation to exclude reliance. *See, e.g., Bridge v. Phoenix Bond & Indem. Co.*, 128 S.Ct. 2131, 2141(2008) ("Congress chose to make mail fraud, not common-law fraud, the predicate act for a

-11-

Case No. 1:09-CV-511
Gwin, J.

RICO violation. And the mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim.") (internal quotations omitted).

Therefore, given the variation in both the statements made to and potential degrees of reliance by the various class members, the Court finds that the Plaintiff's fraud claim lacks a common issue of law or fact the resolution of which would advance the litigation. Although the Court recognizes the issue is somewhat close, the unique nature of the claims in this case ultimately makes class certification unsuitable.

For similar reasons, the Court finds class treatment of the Plaintiff's contract claim inappropriate under the commonality analysis. The Plaintiff says that the Defendants' allegedly fraudulent promises and representations were "incorporated into the terms of the Plaintiff's and the Class members' contracts with Lifestyle Lift." [Doc. 83 at ¶44.] Because the Defendants' advertising varied over time and because the consultant meetings were not sufficiently uniform or scripted, the Court would be unable to ascertain the relevant content of the each class member's contract. Thus, absent a standard contract, no relevant common issue of fact or law exists as to the contract claim.

*3. Rule 23(a)(3): Typicality*

Under Fed. R. Civ. P. 23(a)(3), a plaintiff seeking class certification must show that his or her claims are typical of other potential class members' claims. The Sixth Circuit holds, "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399. The court summarized this legal standard simply:

Case No. 1:09-CV-511
Gwin, J.

"as goes the claim of the named plaintiff, so go the claims of the class." *Id.*

In this case, the Court finds that Plaintiff Faktor's fraud and contract claims are not sufficiently typical of other class members' claims. Like the named plaintiffs in *Sprague*, Plaintiff Faktor could not advance the interests of the entire class because each class members' claim depends on what materials if any she viewed and what conversation she had with a Lifestyle Lift consultant. 133 F.3d at 399 ("Each claim, after all, depended on each individual's particular interactions with GM—and these, as we have said, varied from person to person. A named plaintiff who proved his own claim would not necessarily have proved anybody else's claim."); *see also Romberio v. Unumprovident Corp.*, No. 07-6404, 2009 WL 87510 at *8 (6th Cir. Jan. 12, 2009) (reversing class certification for lack of typicality in wrongful denial of insurance benefits case even though plaintiffs alleged that defendant engaged in "uniform policies and practices," because this uniformity did not "eliminate the need for an individualized assessment as to the ultimate propriety of the benefits decisions affecting each and every class member").

For example, even if a jury were to find that the Defendants fraudulently misrepresented the nature of the procedures Plaintiff Faktor underwent, this determination might not be binding on a class member who saw wholly different advertising, underwent a less-invasive Lifestyle Lift, or who did not have an accompanying blepharoplasty. Thus, it cannot be said that so go the claims of Plaintiff Faktor, so go the claims of the class. Accordingly, the Plaintiff has not shown the typicality required for class certification.

*4. Rule 23(a)(4): Adequacy of Representation*

A plaintiff seeking to represent the class must also show that he or she will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is "essential

Case No. 1:09-CV-511
Gwin, J.

to due process, because a final judgment in a class action is binding on all class members." *Amer. Med. Sys., Inc.,* 75 F.3d at 1083. Adequacy of class representation is initially measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, class members must not have interests that are antagonistic to one another. *Id.*

Interests are antagonistic when there is evidence that the representative plaintiff appears unable to "vigorously prosecute the interests of the class." *Id. See also Alexander Grant & Co. v. McAlister,* 116 F.R.D 583, 588-89 (S.D. Ohio 1987) (explaining that the three-pronged Rule 23(a)(4) test asks: "is the representative a class member, does the representative have a stake in the outcome, and is the representative familiar with the facts and conditions to be challenged on behalf of the class?").

Here, the Defendants do not dispute that the Plaintiff's purported class counsel is qualified. Moreover, reviewing the affidavits provided by class counsel, the Court finds that they would more than adequately represent the class in this litigation. In addition, this Court does not doubt that Plaintiff Faktor would vigorously prosecute the interests of the class.

The Defendants do, however, challenge Plaintiff Faktor's adequacy as a representative because she is allegedly subject to several unique defenses. [Doc. 100 at 28.] This concern, however, more appropriately bears on whether the Plaintiff's claims are typical of the class members' claims. *See Bittinger v. Tecumseh Prod. Co.,* 123 F.3d 877, 884 (6th Cir. 1997) (considering impact of varied defenses to plaintiffs' claims under Rule 23(a)(3) typicality analysis). Thus, the Court finds that were class certification appropriate, Plaintiff Faktor would adequately represent the class.

In summary, the Court finds that although the Plaintiff would satisfy the numerosity and adequate representation prongs of Rule 23(a), she has not satisfied the commonality and typicality

-14-

Case No. 1:09-CV-511
Gwin, J.

requirements. Accordingly, the Court finds class certification of the Plaintiff's claims inappropriate.[9]

### IV. Conclusion

For the foregoing reasons, this Court **DENIES** the Plaintiff's motion to certify.

IT IS SO ORDERED.


Dated: January 15, 2010                             s/         *James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE

---

[9] Because the Court finds that the Plaintiff has not satisfied the Rule 23(a) requirements for class certification, it does not discuss whether the Plaintiff has additionally met the requirements of Rule 23(b)(1) or (b)(3).